Original

22 MAG 6904

Approved: ______________________________
MICHAEL D. NEFF
Assistant United States Attorney

Before: THE HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>GREGORY GUMUCIO,<br>MICHAEL ANDERSON, and<br>HAVEN SOLIMAN,<br><br>Defendants. | **SEALED COMPLAINT**<br><br>Violations of<br>18 U.S.C. § 371 and<br>26 U.S.C. § 7201<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

JUSTIN ELLARD, being duly sworn, deposes and says that he is a Special Agent with the United States Attorney's Office for the Southern District of New York, and charges as follows:

**COUNT ONE**
**(Conspiracy to Defraud the Internal Revenue Service)**

1. From at least in or about 2013 through at least in or about 2020, in the Southern District of New York and elsewhere, GREGORY GUMUCIO, MICHAEL ANDERSON, and HAVEN SOLIMAN, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to defraud the United States and an agency thereof, to wit, the Internal Revenue Service ("IRS").

2. It was a part and an object of the conspiracy that GREGORY GUMUCIO, MICHAEL ANDERSON, and HAVEN SOLIMAN, the defendants, together with others known and unknown, willfully and knowingly would and did defraud the United States and the IRS for the purpose of impeding, impairing, obstructing, and defeating the lawful governmental functions of the IRS in the ascertainment, computation, assessment, and collection of revenue, to wit, GUMUCIO, ANDERSON, SOLIMAN, and others participated in a scheme to evade the assessment and payment of federal income taxes that each

of them owed to the IRS from income they earned through their yoga business, Yoga to the People, and its affiliated entities (collectively, "YTTP"), including by various means, including, among others: (a) using business accounts to pay personal expenses; (b) using nominees to disguise their connection to various entities which, in fact, were part of the YTTP enterprise and from which GUMUCIO, ANDERSON, and SOLIMAN received unreported income; (c) accepting yoga students' payments in cash and paying YTTP employees in cash, without providing the required tax forms to the vast majority of employees; (d) discouraging a nominee "owner" from accepting payments from yoga students via credit card; and (e) failing to file with the IRS a U.S. Individual Income Tax Return, Form 1040, for each tax year between 2013 and 2020 on or about the date required by law, and failing to pay income tax to the IRS on each defendant's taxable income, upon which taxable income, as each defendant knew, there was a substantial amount of tax due and owing to the United States of America.

**OVERT ACTS**

3. In furtherance of the conspiracy and to effect the illegal object thereof, GREGORY GUMUCIO, MICHAEL ANDERSON, and HAVEN SOLIMAN, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On various dates between 2013 and 2019, GUMUCIO directed YTTP subordinates, via text message and/or email, regarding scheduling, paying YTTP employees, paying YTTP expenses, counting YTTP proceeds, storing and concealing YTTP proceeds in GUMUCIO's apartment in New York, New York, and depositing certain YTTP proceeds in specified bank accounts. For example, on or about January 14, 2014, GUMUCIO sent a text message to a YTTP employee instructing the employee to "deposit 3800 of guitar cash" -- which referred to funds collected from yoga classes, which were stored in a guitar case in GUMUCIO's apartment in New York, New York -- into a YTTP bank account.

b. On or about November 5, 2013, GUMUCIO suggested, in a text message sent to a subordinate, that YTTP principally use a cash payroll to pay its employees -- a suggestion that GUMUCIO's subordinate followed.

c. On or about April 13, 2013, SOLIMAN filed an IRS Form 4868, "Application for Automatic Extension of Time to File U.S. Individual Income Tax Return," with the IRS seeking an

extension of time to file her individual tax return, but she never filed a return for that year or the following six years.

d. On or about June 3, 2016, SOLIMAN sent an email to GUMUCIO entitled, "May 2016 Totals," which attached a spreadsheet entitled "May 2016 nyc totals." This spreadsheet included a list of yoga teachers, the number of yoga classes each had taught that month, and the respective amounts that they were each due in their "envelope," a reference to envelopes used to convey cash payments.

e. In or around fall 2019, ANDERSON opened a bank account for YTTP Queens LLC, and also submitted an IRS Form SS-4, Application for Employer Identification Number ("EIN"), to obtain an EIN for YTTP Queens LLC.

(Title 18, United States Code, Section 371.)

**COUNTS TWO THROUGH SIXTEEN**
**(Tax Evasion)**

4. From on or about January 1 of each of the calendar years specified below, through on or about April 15 of the next calendar year, in the Southern District of New York and elsewhere, GREGORY GUMUCIO, MICHAEL ANDERSON, and HAVEN SOLIMAN, the defendants, willfully and knowingly did attempt to evade and defeat a substantial part of the income tax due and owing by each of them to the United States of America for the calendar years specified below, by various means, including, among others: (a) using business accounts to pay personal expenses; (b) using nominees to disguise their connection to various entities which, in fact, were part of the YTTP enterprise and from which GUMUCIO, ANDERSON, and SOLIMAN received unreported income; (c) accepting yoga students' payments in cash and paying YTTP employees in cash, without providing the required tax forms to the vast majority of employees; (d) discouraging a nominee "owner" from accepting payments via credit card; and (e) failing to file with the IRS a Form 1040 for the calendar years below on or about the date required by law, and failing to pay income tax to the IRS on each defendant's taxable income, upon which taxable income, as each defendant knew, there was a substantial amount of tax due and owing to the United States of America:

| COUNT | DEFENDANT | CALENDAR YEAR |
|---|---|---|
| 2 | GREGORY GUMUCIO | 2016 |
| 3 | GREGORY GUMUCIO | 2017 |

| | | |
|---|---|---|
| 4 | GREGORY GUMUCIO | 2018 |
| 5 | GREGORY GUMUCIO | 2019 |
| 6 | GREGORY GUMUCIO | 2020 |
| 7 | MICHAEL ANDERSON | 2016 |
| 8 | MICHAEL ANDERSON | 2017 |
| 9 | MICHAEL ANDERSON | 2018 |
| 10 | MICHAEL ANDERSON | 2019 |
| 11 | MICHAEL ANDERSON | 2020 |
| 12 | HAVEN SOLIMAN | 2016 |
| 13 | HAVEN SOLIMAN | 2017 |
| 14 | HAVEN SOLIMAN | 2018 |
| 15 | HAVEN SOLIMAN | 2019 |
| 16 | HAVEN SOLIMAN | 2020 |

(Title 26, United States Code, Section 7201.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5. I am a Special Agent with the United States Attorney's Office for the Southern District of New York, and I have been personally involved in the investigation of this matter for approximately two years. My duties and responsibilities include the investigation of financial crimes, including wire fraud, mail fraud, tax fraud, identity theft, and money laundering. This affidavit is based on my personal participation in this investigation, my examination of reports, records, emails, text messages, bank records, documents, and photographs, and my conversations with others, including both former YTTP personnel and other law enforcement officers -- including Special Agents from IRS-Criminal Investigation and from the U.S. Department of Labor -- Office of Inspector General. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the offenses above, it does not include all the facts that I have learned during this investigation. Where the contents of documents, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. All dates and numbers are approximate.

**Overview of The Defendants' Scheme to Evade Taxes**

6. As set forth in greater detail below, in or around 2006, GREGORY GUMUCIO, the defendant, founded YTTP in New York, New York. YTTP was originally donation-based: YTTP requested, but did not require, payment from its yoga students. YTTP started with one yoga studio on the Lower East Side of Manhattan, and it became extremely popular. Over the ensuing years, YTTP opened yoga studios or affiliates throughout New York City and in various other places, including California, Colorado, Arizona, Florida, and Washington State. YTTP also had a teacher training program for aspiring yoga teachers. In total, YTTP had at least approximately 20 yoga studios or affiliated entities. YTTP operated from at least approximately 2006 until 2020. From 2010 to 2020, YTTP and its affiliates generated gross receipts of more than $20 million. Yet YTTP never filed a corporate tax return with the IRS.

7. YTTP's leadership included GREGORY GUMUCIO, MICHAEL ANDERSON, and HAVEN SOLIMAN, the defendants. As set forth in greater detail below, GUMUCIO was YTTP's founder, principal owner, and functional Chief Executive Officer ("CEO"). ANDERSON was an owner of YTTP and its functional Chief Financial Officer ("CFO"). SOLIMAN was an owner of YTTP, its Chief Communications Officer, the Director of Education for YTTP's Teacher Training program (the "TT Program"), and was actively involved in YTTP's efforts to expand abroad.

8. GREGORY GUMUCIO, MICHAEL ANDERSON, and HAVEN SOLIMAN, the defendants, each received a large volume of income from YTTP, yet none of the three defendants filed a personal tax return with the IRS for any calendar year from 2013 to 2020, inclusive. Based on my familiarity with the investigation and using conservative figures, for calendar years 2015 to 2020, law enforcement agents have determined that (1) GUMUCIO had unreported income from YTTP exceeding $1.6 million, and a tax due and owing to the IRS exceeding an estimated $431,000; (2) ANDERSON had unreported income from YTTP exceeding $2.1 million, and a tax due and owing to the IRS exceeding an estimated $603,000; and (3) SOLIMAN had unreported income from YTTP exceeding $961,000, and a tax due and owing to the IRS exceeding an estimated $196,000. During the charged period, GUMUCIO, ANDERSON, and SOLIMAN each represented their annual income to be six figures to third parties not associated with the Government (*e.g.*, in loan applications, rental applications, and/or bank documents), yet none of them filed an individual tax return.

9. During the charged period, despite not filing any tax returns and not paying any income taxes, GREGORY GUMUCIO, MICHAEL ANDERSON, and HAVEN SOLIMAN, the defendants, enjoyed extravagant lifestyles, which included, as set forth below and among other things, frequent foreign travel; expensive meals and clothing; NFL season tickets; and horse lodging and horseback riding.

10. YTTP and its leaders, including GREGORY GUMUCIO, MICHAEL ANDERSON, and HAVEN SOLIMAN, the defendants, used various methods to evade taxes, including: accepting yoga students' payments in cash; paying yoga teachers in cash and "off the books"; not keeping corporate books and records; requiring yoga studio managers to transport cash proceeds to GUMUCIO's apartment in New York, New York, where those proceeds were "stacked," counted, and sometimes stored in GUMUCIO's guitar case; using nominees to disguise the defendants' connection to various entities which, in fact, were part of the YTTP enterprise and from which GUMUCIO, ANDERSON, and SOLIMAN all received income; using YTTP business accounts to pay the defendants' personal expenses; declining to give required tax forms to the vast majority of YTTP employees; and discouraging at least one yoga studio manager from accepting payments via credit card.

## **Background on YTTP**

11. Based on my involvement in this investigation, including my interviews of former YTTP employees, my review of publicly available materials, including YTTP's website, my review of search warrant returns for electronic accounts belonging to GREGORY GUMUCIO and MICHAEL ANDERSON, the defendants, my review of bank records, and my review of incorporation records and Treasury Department records, I have learned, among other things, that:

a. GUMUCIO founded YTTP in or about 2006 in the vicinity of St. Marks Place in the East Village of Manhattan. YTTP operated from in or about 2006 until in or about 2020.

b. YTTP claimed to be built on the idea that yoga should be affordable and accessible, *i.e.*, yoga for everyone. YTTP's classes were generally donation-based, *i.e.*, yoga students could pay whatever they could afford, including nothing. YTTP's public website included its "Mantra," which claimed, among other things, that there would be "no ego," "No glorified teachers," and "no pedestals"; that "This yoga is for everyone"; and that "This power is for everyone. Yoga to the People. All bodies rise."

c. Although YTTP was a multimillion-dollar business, YTTP did not have any formal corporate office. Instead, GUMUCIO's apartment on St. Marks Place functioned, for an extended period, as the entity's *de facto* headquarters; and GUMUCIO's text messages and emails functioned, to some extent, as the entity's *de facto* financial ledger.

d. YTTP started with one yoga studio on the Lower East Side of Manhattan but expanded throughout New York City and the country. Ultimately, YTTP had at least approximately 20 yoga studios or affiliated entities, including yoga studios in various New York City locations (*e.g.*, Chelsea, Brooklyn, Queens, and the Upper West Side) as well as in California, Colorado, Arizona, Florida, and Washington State.[1] YTTP also had a teacher training program which earned substantial income from aspiring yoga teachers. YTTP also had an international presence, such as in Spain and Israel.

e. As explained below, on paper, the YTTP entities and/or affiliates each had different EINs; however, in practice, GUMUCIO directed and controlled these entities, with the assistance of his inner circle, which included, among others, ANDERSON and HAVEN SOLIMAN, the defendants. As set forth in greater detail below, GUMUCIO, ANDERSON, and SOLIMAN all received income from multiple different YTTP entities.

f. Financial review of more than 30 bank accounts belonging to YTTP and affiliated entities has revealed that, from approximately 2010 to 2020, YTTP and its affiliates generated gross receipts of more than $20 million.[2]

**The Defendants' Roles at YTTP**

12. YTTP's leadership included GREGORY GUMUCIO, MICHAEL ANDERSON, and HAVEN SOLIMAN, the defendants. GUMUCIO was YTTP's founder, principal owner, and functional CEO, as he directed and made decisions for the YTTP enterprise. State incorporation

---

[1] Some of these entities included: Yoga to the People, Inc.; YTTP Corp.; YTTP Corp. 26/27; YTTP UWS LLC; YTTP Brooklyn LLC; YTTP Queens LLC; YTTP Corp. SF; YTTP Oakland LLC; YTTP Hot Yoga Berkeley LLC; YTTP Hot Yoga Seattle LLC; YTTP AZ LLC; YTTPTTUSA LLC; YTTP 2 LLC; YTTP Hot LLC; and YTTP Advanced Studies LLC.

[2] This approximate amount is conservative. For instance, it does not include (1) cash that was not deposited into bank accounts, and (2) checks deposited for classes and teacher training.

records reveal that GUMUCIO was the registered agent for (1) the business named "Yoga to the People Inc.", which was registered in or about February 2008, and (2) the entity named "HYOP LLC," which was formed in or about January 2020 in Colorado. Information from the U.S. Patent and Trademark Office reveals that GUMUCIO currently holds the trademark for Yoga to the People. The review of the contents of GUMUCIO's electronic accounts, pursuant to judicially authorized search warrants, reveal several instances in which GUMUCIO confirmed his ownership of YTTP. In financial and residential applications, GUMUCIO also confirmed his ownership of YTTP. GUMUCIO's electronic accounts also reveal his regular communications -- including with his co-defendants -- about various dimensions of YTTP's daily operations, including, among other things, its finances, bank accounts, studios, and leases; teachers' teaching schedules and payments to employee; payments of expenses; YTTP's TT Program; and YTTP's efforts to expand domestically and internationally.

13. MICHAEL ANDERSON, the defendant, was an owner of YTTP and the functional chief financial officer. ANDERSON was involved in, among other things, negotiating leases for YTTP entities, obtaining EINs from the IRS, opening bank accounts, and working with GUMUCIO to expand YTTP. State incorporation records reveal that ANDERSON is a Registered Agent for at least approximately eleven entities affiliated with YTTP, which were registered between approximately 2007 and 2019. Bank account records reveal that ANDERSON is a signatory on at least approximately 15 bank accounts associated with YTTP entities, which were opened between 2007 and 2019. In a residential loan application submitted to a mortgage company in January 2020, ANDERSON represented, in part, that he was "Self Employed" at YTTP, where his position was "Owner"; he stated that he had worked there for over seven years.

14. HAVEN SOLIMAN, the defendant, was an owner of YTTP, its Chief Communications Officer, the Director of Education for YTTP's TT Program, and was actively involved in YTTP's efforts to expand internationally. Bank records reveal that SOLIMAN was a signatory on several YTTP bank accounts, including a YTTPTTUSA LLC bank account, two YTTP Advanced Studies LLC bank accounts, and a Hot on Yoga CS LLC bank account; SOLIMAN was the sole signatory on YTTP Advanced Studies LLC bank accounts. Treasury Department records reveal that SOLIMAN is the registered agent, and sole member, for two YTTP entities: YTTPTTUSA LLC and YTTP Advanced Studies LLC. In her LinkedIn profile, SOLIMAN described her two roles at YTTP: (1) the Chief Communications Officer at YTTP from May 2008 until April 2020, and (2) the "Director of Education" at YTTP TT USA from January 2016 until June 2020. PayPal records reveal that,

between approximately 2017 and 2020, a business account in the name of "YttP TT USA" -- which is associated with SOLIMAN's name, birthday, Social Security Number, and email addresses (*e.g.*, haven@yogatothepeople.com) -- received a total of around $566,024.

15. Review of the contents of electronic accounts belonging to GREGORY GUMUCIO and MICHAEL ANDERSON, the defendants, reveals the defendants' sustained involvement in YTTP, including the following examples:

a. In or about December 2012, HAVEN SOLIMAN, the defendant, sent GUMUCIO what appears to be a draft of an email intended for someone else, in which SOLIMAN described herself as "a coowner with my husband, Greg Gumucio, of the east and west coast yoga studio's called 'Yoga to the People'". SOLIMAN continued, "We have always been committed to making quality yoga accessible to everyone, no matter their economic means." SOLIMAN further explained, "What we experienced in our studios was a desire from students to have high quality," comfortable, affordable clothing. Thus, "we have developed the beginnings of a yoga clothing line." The email is signed, "Haven," and contains SOLIMAN's longtime cellphone number in her signature block.

b. On or about August 26, 2013, GUMUCIO sent an email to ANDERSON, in which GUMUCIO, among other things, thanked ANDERSON for the "sacrifices" ANDERSON had made; acknowledged "the money" that ANDERSON had put into the Arizona and Berkeley yoga studios; discussed which YTTP studios were, and which were not, worth keeping; proposed strategies for maximizing profits ("must be donation"); supplied financial guidance to ANDERSON; and directed ANDERSON to deposit money in a particular YTTP account ("deposit $5,000 into 26/27 by 1pm pacific time today").

c. On or about October 2, 2013, in connection with seeking a lease for YTTP, ANDERSON wrote, in substance and part, "Attached are the Profit and Loss and Balance Sheet Reports for three of our studios. Each studio is a separate LLC and we provided the start-up needed for the studios. They have no outstanding debt. Our model is very simple and our main source of income is the donation based yoga." The email is signed, "Michael Anderson" and includes ANDERSON's longtime cellphone number.

d. On or about January 2, 2014, ANDERSON sent an email to GUMUCIO and SOLIMAN entitled, "Hot on Yoga LLC – Form Efile.pdf". ANDERSON wrote, "Attached is what was filed with the state. You will need this info when opening the bank account." A few days later, ANDERSON sent GUMUCIO and SOLIMAN a follow-on email

entitled, "HOT ON YOGA CS LLC – EIN FOR BANK". ANDERSON attached a letter from the IRS dated January 6, 2014, which contained the EIN for "Hot on Yoga CS LLC". The letter from the IRS stated, in part: "Thank you for applying for an Employer Identification Number (EIN). We assigned you EIN [*redacted*]. This EIN will identify you, your business accounts, tax returns, and documents, even if you have no employees. Please keep this notice in your permanent records. When filing tax documents, payments, and related correspondence, it is very important that you use your EIN and complete name and address exactly as shown above."

e. In a reference letter from in or around November 2018, GUMUCIO wrote, in substance and part: "My name is Greg Gumucio and I am the founder and owner of **Yoga To The People.** I founded Yoga To The People in 2007 in NYC. Over the past 12 years Yoga To The People has grown from a single studio in the East Village of NYC to over a dozen studios in NYC, San Francisco, Orlando and Tempe. I oversee 12 Directors, 24 Assistant Directors and employ more than 300 yoga teachers across the country." In this letter, GUMUCIO recommended a YTTP teacher for admission at a university, and he signed this letter as "Greg Gumucio," the "Founder/ Owner" of YTTP. His signature block also included his longtime cellphone number (the "Gumucio Cellphone Number").

**<u>Means and Methods of the Conspiracy</u>**

16. Based on my involvement in this investigation, including interviews of various former YTTP employees, review of the defendants' electronic communications, and review of business and financial records, I have learned that the defendants employed various means and methods to effect the illegal object of their conspiracy, including, among others, the following:

a. Under the leadership of GREGORY GUMUCIO, the defendant, YTTP established a business model designed to generate a large volume of cash to evade the assessment and payment of federal income taxes. While practices varied to some extent between and among different YTTP studios, as well as over the duration of their operation, as a general matter, YTTP (1) was donation-based or priced well below its competitors, and (2) accepted yoga students' payments in cash. Interviews of former YTTP employees, as well as the review of GUMUCIO's electronic communications, confirms that various YTTP studios collected a large volume of cash on a daily basis. For example, as one YTTP former employee ("FE-1") noted, YTTP classes were crowded; teachers passed around tissue boxes and collected cash from students; by the end of the day, teachers might have collected

approximately 10-12 tissue boxes filled with cash. Another former YTTP employee ("FE-2") stated, in substance and part, that GUMUCIO actively discouraged FE-2 from processing credit cards at a particular YTTP studio in New York, New York; *i.e.*, GUMUCIO was encouraging FE-2 to operate a cash business.

b. Under GUMUCIO's leadership, YTTP concealed the volume of income that it received in various ways, including that:

i. YTTP neither had a corporate headquarters, nor maintained formal corporate books and records.

ii. YTTP generally paid its employees in cash and off-the-books.

1. For instance, in a November 2013 text message, a former YTTP employee ("FE-3") asked GUMUCIO, "So should all salaries be cash?" GUMUCIO replied, "yup / except yours / unless you want to deposit and write checks but don't think it's a good idea". FE-3 replied, "K". A few messages later, FE-3 wrote, "I just started with teachers envelopes," which I believe refers to paying YTTP teachers with envelopes containing cash.

2. On or about October 5, 2015, GUMUCIO forwarded HAVEN SOLIMAN, the defendant, an email entitled, "Fwd: sept", which attached a spreadsheet named "September 2015 NYC totals". One section of that spreadsheet listed (i) more than 50 apparent yoga teachers, (ii) the number of classes they had each apparently taught that month, and (iii) the corresponding amount they were due in cash. In fact, there is a column entitled "envelope total," which I believe is the amount of cash for each teacher's envelope.

iii. YTTP generally did not provide tax forms to its personnel.

1. As FE-1 stated, in substance and part, YTTP teachers did not receive W-2 forms or 1099s. GUMUCIO refused to provide this kind of documentation.

2. As FE-2 stated, in substance and part: Over the years, YTTP teachers would ask for tax forms, but they would usually be denied. When such a request was made, YTTP leadership treated it as a big deal, and it resulted in contentious conversations.

3. FE-3 stated, in substance and part, that anytime FE-3 asked GUMUCIO for a tax form, it turned into an argument; sometimes, GUMUCIO told FE-3 to ask ANDERSON about it, but ANDERSON never got back to FE-3.

iv. GUMUCIO kept secret how much money YTTP earned.

1. YTTP's teachers were generally forbidden from counting the incoming cash that students paid. Instead, that cash was generally transported from YTTP studios to a centralized location to be "stacked" and counted. For various East Coast studios, the centralized location for an extended period was GUMUCIO's apartment on St. Marks Place, in New York, New York; for certain West Coast studios, the location was a "yoga house" (a colloquial name for a residence where YTTP teachers lived). Former YTTP employees described regular "stacking parties," where cash would be removed from envelopes, flattened, organized by dollar amount, and counted. There could be anywhere from three to ten people at a stacking party. GUMUCIO either attended in person or provided direction, including instruction via text message as to how to handle the funds. When he was not physically present, GUMUCIO sought regular updates via text message as to the "totals," including the amount of cash being stored in his guitar case in his apartment; in various instances, the amount reported to be in his guitar case exceeded $20,000 or even $30,000 (*e.g.*, "31,298 guitar").[3] The employee serving as "director" of stacking on a given night would make a record somewhere of how much money was collected, but no one else was supposed to know how much money came in.

c. The defendants used nominees to disguise their connection to various entities which, in fact, were part of the YTTP enterprise and from which the defendants received unreported income. To that end:

---

[3] For instance, in an October 2013 text message, GUMUCIO wrote to FE-3, "have you counted mon tues st marks envelopes??? / ???? ????" FE-3 replied, in substance and part, that a particular amount, which exceeded 13,000, "was in guitar" after the Sunday evening count. Then, FE-3 added Monday and Tuesday's totals, as well as "tt cash," with the result being: "TOTAL GUITAR = 18,089", which I believe indicates that there was more than $18,000 in the guitar case in GUMUCIO's apartment on St. Marks Place in Manhattan at that time.

i. YTTP had a number of yoga studios in the vicinity of college campuses, including in New York City, Seattle, San Francisco, and Berkeley.

ii. GUMUCIO targeted and groomed typically young women and others to become nominee "owners" of studios; he lured them with the title of studio owner, when, in fact, he generally controlled business decisions, he took a cut of their proceeds, and they generally took on meaningful financial risk.

d. All three defendants paid personal expenses out of YTTP business bank accounts.

e. Under GUMUCIO's leadership, studio managers/co-owners were instructed to meet a particular quota for YTTP TT recruitment; if they did not, they were reprimanded. YTTP's TT Program was considered extremely lucrative; one former YTTP employee ("FE-4") described TT as "a huge cash cow" for YTTP, as tuition was about $2,000 per student, it was held twice per year, and some TT classes had 60 students in them. Payments to the TT Program were deposited into the YTTPTTUSA LLC and YTTP Advanced Studios LLC bank accounts, which were accounts for which SOLIMAN was a signatory (or the sole signatory). The TT Program also provided a steady stream of candidates who could potentially become future nominee "owners" of new studios/affiliates; *i.e.*, the TT Program was a pool of individuals who could enable GUMUCIO to further grow YTTP.

f. GUMUCIO maximized his unreported income by manipulating subordinates into providing free labor (*e.g.*, teaching unpaid classes, stacking cash, cleaning yoga studios, depositing cash into bank accounts, etc.).

**Income Generated and The Defendants' Failure To File Tax Returns**

17. Based on my discussions with two IRS Special Agents (the "IRS Agents"), as well as my review of documents and records supplied by the IRS, I am aware of the following, among other things:

GREGORY GUMUCIO

a. IRS Agents reviewed IRS records for the tax-filing history of GREGORY GUMUCIO, the defendant. GUMUCIO did not file a corporate or individual income tax return for YTTP entities or for himself for any of tax years 2010 through 2020. The IRS also has no record of GUMUCIO having filed any Forms 941 (Employer's

Quarterly Federal Tax Return) or any Forms 940 (Employer's Annual Federal Unemployment Tax Return).[4]

b. IRS Agents reviewed bank records for GUMUCIO's personal bank account. This bank account was opened in GUMUCIO's name, is associated with his known date of birth and Social Security Number, contains his apparent signature on account opening documentation, identifies his employer as "YOGA FITNESS," and is associated with several known addresses of GUMUCIO. GUMUCIO is the sole known signatory on this bank account (the "Gumucio Bank Account").

c. The Gumucio Bank Account received payments by check or electronic transfer from various YTTP business accounts. For the period from only 2015 through 2020, the Gumucio Bank Account received deposits, in total, of at least $1,679,728 directly from YTTP entities, as set forth in the chart below.[5] Specifically, the Gumucio Bank Account received payments or deposits from at least approximately 10 YTTP entities.

d. For tax years 2015 through 2020, the income that GUMUCIO received in the Gumucio Bank Account from YTTP gives rise to a tax due and owing to the IRS of at least approximately $431,629 (if filing single) or $638,010 (if filing married and jointly with HAVEN SOLIMAN, the defendant),[6] to wit:

---

[4] A few YTTP-affiliated entities did file corporate tax returns, but these were a clear minority of such entities, and they were filed by other individuals, not by any of the defendants.

[5] This estimate is conservative and does not include, among other things, personal expenditures from YTTP business bank accounts or cash that may have been taken from YTTP and deposited into the Gumucio Bank Account.

[6] These are conservative estimates that include standard deductions. GUMUCIO and HAVEN SOLIMAN, the defendant, are long-term romantic partners, but to date, no marriage certificate has been located. Moreover, GUMUCIO and SOLIMAN each *did* file tax returns for tax year 2021; GUMUCIO filed as single, and SOLIMAN filed as head of household, which requires that the taxpayer be single.

*Filing single with no dependents*:

| Tax Year | Unreported Income | Tax Due and Owing |
|---|---|---|
| 2015 | $186,520.00 | $42,413.00 |
| 2016 | $207,970.00 | $48,744.00 |
| 2017 | $362,842.00 | $100,801.00 |
| 2018 | $381,000.40 | $104,840.00 |
| 2019 | $389,714.91 | $107,324.00 |
| 2020 | $151,680.75 | $27,507.00 |
| **Total** | **$1,679,728.06** | **$431,629.00** |

*Married filing jointly with three dependents*:

| Tax Year | Unreported Income | Tax Due and Owing |
|---|---|---|
| 2015 | $305,316.00 | $65,525.00 |
| 2016 | $315,974.00 | $69,111.00 |
| 2017 | $576,492.50 | $168,493.00 |
| 2018 | $550,553.33 | $135,673.00 |
| 2019 | $606,931.91 | $154,273.00 |
| 2020 | $286,367.75 | $44,935.00 |
| **Total** | **$2,641,635.49** | **$638,010.00** |

HAVEN SOLIMAN

e. As noted, HAVEN SOLIMAN, the defendant, is a signatory on the bank accounts for at least two YTTP-affiliated entities, each of which has "YTTP" in the entity name (YTTPTTUSA, LLC and YTTP Advanced Studies LLC).

f. IRS Agents reviewed IRS records for SOLIMAN, which revealed, among other things, the following:

i. At least for tax years 2013 through 2020, there is no record of SOLIMAN having filed a corporate or individual income tax return for any YTTP entities or for herself.

ii. SOLIMAN did, however, file at least one extension request with the IRS, thus demonstrating her awareness of her filing obligation; SOLIMAN also previously filed an individual tax return, including in or around 2007.

iii. The IRS sent SOLIMAN notices regarding delinquent returns (*i.e.*, her failure to file tax returns). For instance, one such IRS Notice was mailed to SOLIMAN on or about

December 23, 2019 for tax year 2018, and another was mailed to SOLIMAN on or about March 1, 2021 for tax year 2019. These IRS Notices informed SOLIMAN of her non-filing and requested SOLIMAN to file her tax returns immediately. However, the IRS has no record of SOLIMAN having filed a tax return for any tax year from at least 2013 through 2020.

g. IRS Agents reviewed bank records for SOLIMAN's personal bank account. This bank account was opened in SOLIMAN's name ("Haven M Soliman"), is associated with her known date of birth and Social Security Number, contains her apparent signature on account opening documentation, and is associated with a known address of hers. From at least approximately October 2013 through 2020, SOLIMAN was the sole known signatory on this bank account (the "Soliman Bank Account").[7]

h. The Soliman Bank Account received payments by check or electronic transfer directly from various YTTP business accounts. For the period from 2015 through 2020, the Soliman Bank Account received deposits, in total, of at least approximately $961,907 directly from YTTP entities.[8] Specifically, the Soliman Bank Account received payments or deposits from at least approximately eight YTTP entities.

i. For tax years 2015 through 2020, the income that SOLIMAN received in the Soliman Bank Account from YTTP gives rise to a tax due and owing to the IRS of at least approximately $196,791.00 (if filing single) or $638,010.00 (if filing married and jointly with GUMUCIO), to wit:

---

[7] Prior to October 2013, SOLIMAN's relatives appear to have been secondary signatories on the account, which was originally opened as a College Checking account.

[8] This estimate is conservative and does not include, among other things, personal expenditures from YTTP business bank accounts or cash that may have been taken from YTTP and deposited into the Soliman Bank Account.

*Filing single with no dependents*:

| Tax Year | Unreported Income | Tax Due and Owing |
|---|---|---|
| 2015 | $118,796.00 | $23,450.00 |
| 2016 | $108,004.00 | $20,386.00 |
| 2017 | $213,650.50 | $50,472.00 |
| 2018 | $169,552.93 | $32,106.00 |
| 2019 | $217,217.00 | $46,949.00 |
| 2020 | $134,687.00 | $23,428.00 |
| **Total** | **$961,907.43** | **$196,791.00** |

*Married filing jointly with three dependents*:

| Tax Year | Unreported Income | Tax Due and Owing |
|---|---|---|
| 2015 | $305,316.00 | $65,525.00 |
| 2016 | $315,974.00 | $69,111.00 |
| 2017 | $576,492.50 | $168,493.00 |
| 2018 | $550,553.33 | $135,673.00 |
| 2019 | $606,931.91 | $154,273.00 |
| 2020 | $286,367.75 | $44,935.00 |
| **Total** | **$2,641,635.49** | **$638,010.00** |

MICHAEL ANDERSON

j. IRS Agents also reviewed IRS records for MICHAEL ANDERSON, the defendant. For tax years 2013 through 2020, there is no record of ANDERSON having filed a corporate or individual income tax return for YTTP entities or for himself. As noted, ANDERSON was the responsible party for tax filing purposes for at least approximately ten different YTTP or YTTP-affiliated entities. ANDERSON did, however, file extension requests with the IRS for tax years 2013, 2014, and 2015, thus demonstrating his awareness of his filing obligation.[9]

k. IRS Agents reviewed bank records for ANDERSON's four personal bank accounts. ANDERSON is listed as the sole signatory, and the sole owner, of each account. All four accounts

[9] ANDERSON also previously filed an individual tax return, including for tax years 2004, 2005, and 2006, further demonstrating awareness of his filing obligation. Moreover, when ANDERSON and his then-spouse filed for bankruptcy in 2004, they signed a petition listing their creditors, which included the IRS with claims of $28,000.00 for "obligation for Incomes Taxes."

were opened in ANDERSON's name, are associated with his known date of birth and Social Security Number, and are associated with his longtime cellphone number (the "Anderson Bank Accounts").

l. The Anderson Bank Accounts received payments by check or electronic transfer from various YTTP business accounts. For the period from 2015 through 2020, the Anderson Bank Accounts received deposits, in total, of at least approximately $2,196,989.89 directly from YTTP entities.[10] Specifically, the ANDERSON Bank Accounts received payments or deposits from at least approximately ten YTTP entities.

m. For tax years 2015 through 2020, the income that ANDERSON received in the Anderson Bank Accounts from YTTP gives rise to a tax due and owing to the IRS of at least approximately $603,601.00 (filing single), to wit:

| Tax Year | Unreported Income | Tax Due and Owing |
|---|---|---|
| 2015 | $327,288.00 | $88,951.00 |
| 2016 | $340,266.99 | $93,284.00 |
| 2017 | $420,630.09 | $120,112.00 |
| 2018 | $511,546.21 | $150,531.00 |
| 2019 | $387,655.67 | $106,603.00 |
| 2020 | $209,602.93 | $44,120.00 |
| **Total** | **$2,196,989.89** | **$603,601.00** |

18. Based on my involvement in this investigation, including my review of financial records, electronic evidence, and business records, I have learned that GREGORY GUMUCIO, MICHAEL ANDERSON, and HAVEN SOLIMAN, the defendants, had a large volume of income -- and associated spending -- during the years in question. This evidence includes, among other things, the following:

GREGORY GUMUCIO

a. *Credit Card Statements*: For the period from 2015 through 2020, GUMUCIO's credit card statements reveal lavish spending, including, among other things, the following:

i. United Airlines: $269,712

[10] This estimate is conservative and does not include, among other things, personal expenditures from YTTP business bank accounts or cash that may have been taken from YTTP and deposited into the Anderson Bank Accounts.

ii. Hotels: $75,994
iii. Restaurants/Fine Dining: $39,069
iv. Stubhub: $30,541
v. Country Club: $31,261
vi. Amazon: $14,659
vii. Apple: $13,736
viii. Health Sauna: $15,576
ix. Neiman Marcus: $10,375

b. In addition, from approximately 2016 through 2019, GUMUCIO paid approximately $158,593 in personal credit card bills from various YTTP business bank accounts.

c. *Season Tickets*: During the period from 2011 through 2014, GUMUCIO had Denver Broncos season tickets, totaling approximately $40,640.

d. *Foreign Travel*: Analysis of GUMUCIO's iCloud account reveals that, between in or about 2016 and 2019, GUMUCIO appears to have traveled to locations that included, among others, the following: Aruba, Bolivia, France, Hungary, Israel, Japan, Jordan, Mexico, the Philippines, Thailand, Taiwan, Turkey, and Turks and Caicos.

e. *Representations about Income in Other Documents*: GUMUCIO has made representations about his income in a variety of other documents, including the following:

i. In a real estate application for rental property from March 2012 signed by GUMUCIO, he listed himself as the owner of YTTP Corp, YTTP SF, and YTTP Berkeley from 2005 to present, with gross monthly pay of $18,000.

ii. In July 2014, GUMUCIO represented to a bank ("Bank-1") that he is employed by YTTP Corp. and his income is $150,000.

iii. In August 2014, GUMUCIO represented to Bank-1 that he is "Owner Yoga Stud [sic]" with income of $205,000.

iv. In February 2015, GUMUCIO represented to Bank-1 that he is self-employed, and his income is $220,000.

v. In or about 2016, GUMUCIO represented to a car financing company that he had been the owner of YTTP Inc. located at 12 St. Marks Place in New York, New York for 10 years and his gross annual salary was $285,000.

vi. In a November 2016 rental application, GUMUCIO listed his gross monthly income as "30K" and represented that he was the owner of YTTP Inc.

vii. *GUMUCIO's Fabricated Tax Return*: In an email from GUMUCIO to a management services company in or about November 2016, GUMUCIO attached his purported tax return for tax year 2015, which listed his and SOLIMAN's total income as $488,750. This appears to be a fabricated tax return, as GUMUCIO did not file a tax return with the IRS for tax year 2015. Specifically:

1. In February 2016, a real estate salesperson sent an email to GUMUCIO and a senior YTTP employee regarding a "rental application for Greg's new unit in NYC" on Fifth Avenue. The real estate salesperson requested "supporting documents," including, among other documents, "the CPA Letter" and the "past two years tax returns." A few days later, GUMUCIO sent an email to MICHAEL ANDERSON, the defendant, which contained a photograph of Social Security cards for GUMUCIO and his three children.

2. Shortly thereafter, ANDERSON sent an email to GUMUCIO with an attachment entitled, "1040-GG-Draft2.pdf". ANDERSON's email attached a purported draft Form 1040 for GUMUCIO and HAVEN SOLIMAN, the defendant, which included the four Social Security Numbers that GUMUCIO had recently sent ANDERSON. ANDERSON's email mentioned, among other things, that "we need to talk about the preparer part and what I should use." ANDERSON's email also noted, "regarding the [CPA] letter, i want to discuss with you as well. it has been hard for me to find any kind of sample letter." The "preparer's name" on the draft Form 1040 attached to ANDERSON's email was "Michael Anderson," and ANDERSON signed the purported Form 1040 and wrote a date of April 10, 2015 -- even though GUMUCIO did not appear to request this form until in or around February 2016. In other words, ANDERSON appears to have originally backdated this form by nearly a year.[11] The draft Form 1040 reported GUMUCIO's occupation as "YTTP Owner," reported SOLIMAN's occupation as "Yoga Instructor," and reported their total income as more than $510,000 and their total taxable income as more than $485,000. This was the same fabricated tax return that GUMUCIO later sent to the management services company in or around November 2016.

---

[11] A later draft of the same Form 1040 for GUMUCIO contains a February 2016 date by ANDERSON's signature.

3. ANDERSON also sent GUMUCIO an email with a purported CPA letter, in which "Michael E. Anderson" represented (in the letterhead) that he was a CPA in "Cathlamet, Washington."

4. My review of publicly available information reveals that the list of CPAs in Washington State does not include a "Michael E. Anderson".

5. The IRS has no record of the Form 1040 sent by ANDERSON to GUMUCIO having been filed with the IRS. Accordingly, I believe that GUMUCIO, ANDERSON, and others not named as defendants herein worked together to prepare a false Form 1040 for tax year 2015 for GUMUCIO, which was sent to the management services company in or about November 2016.

MICHAEL ANDERSON

f. *Credit Card Statements*: For the period from 2015 through 2020, defendant MICHAEL ANDERSON's credit card statements reveal lavish spending, including, among other things, more than approximately $100,000 on airline charges.

g. *Travel*: Analysis of ANDERSON's Google account, and GUMUCIO's iCloud account, including geographical metadata associated with their photographs, reveals that, between in or about 2017 and 2019, ANDERSON appears to have traveled to locations that included, among others, the following (some of which was with GUMUCIO and/or a member of GUMUCIO's immediate family): Japan, South Korea, Taiwan, Hawaii, the Philippines, France, the United Kingdom, Germany, Hungary, Switzerland, Portugal, Spain, Morocco, Sri Lanka, the Maldives, Malaysia, Canada, Mexico, Ireland, Jordan, Vietnam, and Cambodia.

h. *Representations about Income in Other Documents*: Based on my review of various documents, including business records provided by financial institutions and mortgage companies, I have learned that ANDERSON has made representations about his income in various documents, including the following:

i. In or about September 2016, ANDERSON applied for a commercial space for Hoy Yoga Orlando LLC. In his applicant package, ANDERSON listed his annual salary as "325,000".

ii. In or about January 2020, ANDERSON applied to refinance his mortgage with a mortgage company. In the employment information section, ANDERSON reported, in substance and part, that he had been self-employed at YTTP for seven years and two

months. For monthly income, ANDERSON listed a base income of $19,582 and net rental income of $189, totaling $19,771.

iii. In January 2020, ANDERSON also applied to a different mortgage loan provider ("Mortgage Loan Provider-1") for refinancing. In this application, he represented that he had worked for YTTP, located at 12 Saint Marks Place in New York, New York, for approximately 9.6 years with a monthly base income of $32,692.00.

iv. *ANDERSON's Fabricated Tax Returns*: Based on my review of records provided by Mortgage Loan Provider-1, I have learned that ANDERSON appears to have submitted fabricated tax returns to Mortgage Loan Provider-1:

1. ANDERSON submitted to Mortgage Loan Provider-1 purported Forms W-2 for tax years 2018 and 2019 allegedly issued by YTTPTTUSA LLC. These documents state that ANDERSON's gross wages were $425,000 for tax year 2019 and $400,000 for tax year 2018. These documents represent, among other things, that the "Federal income tax withheld" was $121,144 in the purported 2019 Form W-2, and $112,394 in the purported 2018 Form W-2. However, as noted above, ANDERSON did not file a tax return with the IRS for either tax year and paid no taxes.

2. ANDERSON also submitted to Mortgage Loan Provider-1 purported Forms 1040 for himself for tax years 2018 and 2019. Both purported Forms 1040 bear ANDERSON's name, Social Security Number, apparent signature, and no information in the preparer section. In these purported Forms 1040, ANDERSON represented that, in 2019, his total income was $453,103 and his taxable income $440,903; and in 2018, his total income was $428,596 and his taxable income $416,596. But as noted above, ANDERSON did not file a tax return with the IRS for either tax year and paid no taxes. Accordingly, and in light of all of the information set forth in this Complaint, I believe that the purported Forms 1040 that ANDERSON sent to Mortgage Loan Provider-1 were fabricated.

<u>HAVEN SOLIMAN</u>

i. *Horses*: Analysis of a particular YTTPTTUSA LLC account for which "Haven M Soliman" is listed as the sole member ("YTTPTTUSA LLC Account-1") reveals that, in 2017 and 2018, SOLIMAN paid a total of more than approximately $48,900 in horse-related fees, including for apparent horse shows, a "horse lease," horse boarding, and horse shoes. At the time of these payments (*i.e.*,

in 2017 and 2018), SOLIMAN was the only signatory on YTTPTTUSA LLC Account-1.[12]

j. *Foreign Travel*: Analysis of GUMUCIO's iCloud account, and of ANDERSON's Google account, reveals that, between in or about 2016 and 2019, SOLIMAN appears to have traveled to locations that included, among others, the following (some of which were with GUMUCIO and/or ANDERSON): Aruba, France, the Philippines, Israel, Jordan, and Bolivia.

k. *Representation about Income*: Based on my review of bank documents, I am aware that in 2020, SOLIMAN reported to a bank that she was self-employed and her annual income was $150,000.

WHEREFORE, I respectfully request that warrants be issued for the arrests of GREGORY GUMUCIO, MICHAEL ANDERSON, and HAVEN SOLIMAN, the defendants, and that they be arrested and imprisoned or bailed, as the case may be.

/s/ Justin Ellard w/ permission
JUSTIN ELLARD
Special Agent
United States Attorney's Office,
Southern District of New York

Sworn to me through the transmission of
this Affidavit by reliable electronic means,
pursuant to Federal Rules of Criminal Procedure
41(d)(3) and 4.1, this 22nd day of August, 2022

Katharine H Parker
THE HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York

[12] GUMUCIO was added as a signatory on this account in July 2019.